IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,059

STATE OF KANSAS,
*Appellee*,

v.

ROGELIO SOTO, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

The mandate rule applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate. If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case.

2.

Under K.S.A. 2018 Supp. 22-3501(1) a motion for new trial based on newly discovered evidence may be made within two years after final judgment.

1

3.

When a conviction or convictions have been affirmed on appeal but at least some part of the sentence has been vacated and remanded to the district court for resentencing, there is no final sentence and, hence, no final judgment under K.S.A. 2018 Supp. 22-3501(1).

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed July 26, 2019. Judgment of the district court is reversed and remanded with directions.

*Kevin J. Zolotor*, of O'Hara & O'Hara, LLC, of Wichita, argued the cause, and *Charles A. O'Hara*, of the same firm, was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.:  Defendant Rogelio Soto, Jr., appeals the district court's rejection of his claim that he is entitled to a new trial without holding a hearing on the merits of his claim under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Soto alleges that vital information undercutting the State's star trial witness came to light for the first time while this case was on remand to the district court for resentencing.

We hold that neither Kansas' mandate rule nor K.S.A. 2018 Supp. 22-3501(1) prevented the district court from holding the hearing Soto sought. We therefore reverse and remand this case to the district court for that hearing and for any additional proceedings that are necessary once the *Brady* issue is decided.

2

FACTUAL AND PROCEDURAL BACKGROUND

Soto was convicted of first-degree premeditated murder in the March 2009 stabbing death of Arturo Moreno. According to the evidence at trial, Soto had three confederates in the crime and its concealment: Giovanni Gonzalez, Luis Navarrette-Pacheco, and Angel Castro.

Castro testified in favor of the prosecution at Soto's trial, stating that he saw Soto holding a knife shortly before Moreno was killed, that Castro stepped outside the apartment and was not present for the stabbing, and that Soto later admitted to killing Moreno. Castro also described directing police to the place where he and Soto and the others disposed of evidence from the crime scene.

During Castro's cross-examination, Soto's counsel highlighted that Castro had been untruthful and less than complete in his initial interview with police—among other things, denying that he had helped to clean up after the crime—and that his story about what happened changed only during his second police interview when he was confronted with conflicting evidence. Castro also said on cross-examination that he had not seen Moreno's body, even though he had testified on direct examination that he did "know what happened."

Soto's jury also heard testimony that Castro received favorable treatment from the State in exchange for his cooperation.

The closing arguments from both sides at Soto's trial also featured Castro's testimony. The State emphasized its probative value on the issue of premeditation. Soto's counsel again focused on how Castro's version of events had shifted over time and

3

questioned how Castro's claim that he was not involved in the stabbing was consistent with evidence of Moreno's blood on Castro's clothing.

The jury convicted Soto of first-degree murder, and the State sought a hard 50 life sentence. Under the statute applicable at the time, District Judge David J. Kaufman imposed a hard 50 sentence after finding the existence of aggravating factors. See *State v. Soto,* 299 Kan. 102, 108, 322 P.3d 334 (2014).

While Soto's direct appeal was pending before this court, the United States Supreme Court handed down its decision in *Alleyne v. United States*, 570 U.S. 99, 111-16, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), which held that fact-finding in support of imposition of mandatory minimum sentences such as Kansas' hard 50 must be done by juries rather than judges. Given this controlling federal constitutional law, this court vacated Soto's hard 50 sentence and remanded for resentencing. 299 Kan. at 124.

This court's mandate was signed by the appellate clerk on May 6, 2014.

The Legislature, in a special session, amended the hard 50 statute in response to *Alleyne*. After the statutory amendment, on remand in this case, the State again sought a hard 50 sentence for Soto. A resentencing hearing before a jury was scheduled to determine whether aggravating circumstances existed to support that mandatory minimum.

Because Judge Kaufman had ruled that Soto would be allowed to introduce evidence of the sentences the other participants in Moreno's murder received, the State retrieved information about Navarrette-Pacheco's plea arrangement. And, on May 3, 2016, the morning the resentencing hearing was set to begin, Soto's counsel received an email from the State that said:

4

"I couldn't figure out why the D.A. on the case gave the plea offer, from the file. But after looking at the JE of the judgment closer, he used defendant's lack of participation as a departure factor. Since that wasn't in the plea, I pulled the departure motion. It's attached and includes the results of the two polygraphs administered to Navarrette."

The referenced attachment reported that Navarrette-Pacheco had said during interviews conducted at the same time as his polygraph examinations that Castro was in the room in the apartment when the stabbing of Moreno began and had seen Gonzalez initiate it and Soto join in, just as Naverrette-Pacheco had. This information contradicted Castro's testimony at Soto's trial that Castro had left the apartment before the attack started.

When Judge Kaufman learned of the email and its attachment, he delayed Soto's resentencing hearing and directed the parties to address the procedure to be followed and any relief sought as a result of the discovery of the polygraph examination reports.

Soto filed a written "Statement of Relief Sought" on June 24, 2016, seeking a "new trial based on (1) a *Brady* violation and (2) newly discovered evidence." He argued that the mandate rule presented no obstacle to his relief because it prohibited only relitigation of issues, and "the issue raised (Brady violation) has never been litigated in this case."

For its part, the State's written argument did not contend that the mandate rule precluded Judge Kaufman from reaching the merits of Soto's *Brady* claim; it said the judge was free to employ the rule in his discretion to avoid doing so. It also argued that K.S.A. 2018 Supp. 22-3501(1) on motions for new trial was inapplicable because Soto's motion for a new trial was unrelated to the reason or purpose of the resentencing remand. On the merits of the *Brady* issue, the State asserted that there had been no violation.

5

The State then filed a notice that it no longer intended to seek a hard 50 sentence for Soto. This meant that Soto would instead receive a required hard 25 life sentence. See K.S.A. 21-3401 (first-degree murder off-grid crime); K.S.A. 2018 Supp. 21-6806(c) (formerly cited as K.S.A. 21-4706) (sentence for off-grid crime life imprisonment); K.S.A. 2018 Supp. 22-3717(b)(2)(B) (inmate convicted of premeditated first-degree murder in 2009 eligible for parole after 25 years).

Next, Soto filed an Amended Motion for Relief and Response in which he advanced an alternative basis for new trial: ineffective assistance of counsel. He alleged that his trial attorney's performance was unconstitutionally and prejudicially deficient because the attorney had failed to discover Navarrette-Pacheco's polygraphs and related statements.

Judge Kaufman held a hearing on the dueling filings. Among other arguments advanced by the defense, Soto's counsel asserted that the Navarrette-Pacheco statements at the heart of the controversy did not truly qualify as "newly discovered" under K.S.A. 2018 Supp. 22-3501(1) because the State had been aware of them at the time of Soto's trial.

Judge Kaufman ruled:

"1. Defendant (D) is procedurally barred from litigating th[e alleged *Brady* violation by the State] at this time. As such, the court does not reach the merits of the issue . . . and relief sought by D.

"2. D's motion for new trial based on newly discovered evidence pursuant to K.S.A. 22-3501(1) was abandoned by D at oral argument. As such, this issue is rendered moot and the court declines to express any dicta.

6

"3. D's motion for new trial based on a *Brady* violation has no procedural basis under the law. This court has found no statutory or case law mechanism which allows a district court to entertain such a motion on the merits, based on the unique posture of this case, i.e. D's conviction was affirmed on appeal, but the Hard 50 sentence was reversed and the case remanded for a resentencing trial on the Hard 50 if the State sought the same[,] which it did via its May 21, 2014[,] Notice but then subsequently withdrew on July 19, 2016. As such, but for the issue raised by D in its motion herein, D's case is set for resentencing on a 1st degree premeditated murder conviction. Statutory law dictates what the non-Hard 50 sentence shall be.

"4. D is not without procedural relief however.

"—based on the ruling herein, D's case shall proceed to resentencing, after which D can appeal this court's denial of the motion herein. D can await the Supreme Court's ruling on the issue. If the Supreme Court affirms this court, D will presumably proceed with a 60-1507 petition. If the Supreme Court reverses this court, D's motion herein will be substantively addressed by the court.

"—alternatively, D could file a 60-1507 petition immediately after resentencing herein, in lieu of filing a direct appeal as discussed above.

"NOTE: Because of the distinct possibility of this court in the future having to address the merits of D's issue herein, this court expresses no opinion re the same."

The judge's ruling did not address Soto's ineffective assistance of counsel claim.

After receiving the ruling, Soto filed a Request for Specific Findings and Motion to Reconsider. He again asserted that the State had committed a *Brady* violation and that he was entitled to new trial based on newly discovered evidence or ineffective assistance of counsel.

At a November 22, 2016, hearing on Soto's request and motion, his counsel said that the defense had not meant to abandon its assertion of a right to new trial based on newly discovered evidence. Rather, counsel said the defense had meant to convey that there was a difference between the specific legal standard for granting a new trial based on a *Brady* violation and the general legal standard for granting a new trial based on newly discovered evidence under K.S.A. 2018 Supp. 22-3501(1). Counsel also argued that a new trial could be granted to Soto because of ineffective assistance of counsel, regardless of whether a motion for new trial was untimely, citing *State v. Reed*, 302 Kan. 227, 352 P.3d 530 (2015), and *State v. Denomme*, No. 113,941, 2016 WL 3031252 (Kan. App. 2016) (unpublished opinion). In short, according to the defense, the State had either violated *Brady* by failing to disclose the Navarrette-Pacheco information or Soto's trial counsel had been ineffective for failing to find it; either way, Soto was entitled to a new trial as a remedy.

The State responded briefly to Soto's counsel, distinguishing *Reed* and *Denomme* as decisions dealing with mislabeled pro se motions for new trial that could be considered under the "[K.S.A.] 60-1507 umbrella. And while you may have the discretion, Judge, that's not the same as being required to grant a hearing." The prosecutor acknowledged that an allegation of a *Brady* violation could be "looked at underneath a motion for new trial," citing *Wilkins v. State*, 286 Kan. 971, 190 P.3d 957 (2008), but said that Judge Kaufman had already correctly decided that the new trial remedy was no longer available to Soto. "[Soto] certainly would preserve his right for whatever goes on in the future regarding a 1507 or whatever other claims he wants to change or make in the future," she said, but she insisted that Soto should not be able to revive a motion for new trial argument his counsel had previously voluntarily abandoned.

Judge Kaufman ruled on Soto's Request for Findings and Motion for Rehearing before proceeding to resentencing. He said he had assumed that any *Brady* material

8

would qualify as newly discovered evidence under K.S.A. 2018 Supp. 22-3501(1) but had not previously analyzed whether Soto's motion for new trial was timely because he understood Soto to have withdrawn the argument that he was entitled to relief by that route. With the understanding that Soto in fact wanted to continue to assert that argument, the judge noted that Soto's motion for new trial based on newly discovered evidence came too late unless it was filed within two years of a "final judgment." The judge ruled that a "final judgment" under K.S.A. 2018 Supp. 22-3501(1) required only a final conviction and not a final sentence, meaning there was a final judgment in Soto's case as soon as the mandate on his direct appeal issued in early May 2014; the request for relief based on the *Brady* claim filed June 24, 2016, thus fell outside the statutory time limit. We note that K.S.A. 2018 Supp. 22-3501(1) has remained untouched by the legislature since the judge's decision. Judge Kaufman also rejected Soto's argument that *Reed* and *Denomme* authorized a procedural path to a hearing on the merits of the ineffective assistance claim. Believing he lacked a procedure to follow, the judge did not reach the merits of either the *Brady* claim or the ineffective assistance of counsel claim, and he resentenced Soto to the required hard 25 life sentence.

On appeal, Soto continues to seek a hearing on the merits of his *Brady* claim. At oral argument before this court, his counsel finally confirmed that such a hearing is the only relief Soto seeks and that the various arguments advanced in the district court and here under the motion for new trial statute and ineffective assistance theory were merely intended as vehicles to reach that goal. Counsel argued that Soto should not have to wait for another appellate mandate and then file a motion under K.S.A. 60-1507 to get a ruling on whether the State withheld or his trial counsel missed game-changing exculpatory evidence about Navarrette-Pacheco's version of the murder.

In its appellate brief and at oral argument here, the State switches gears on the mandate rule—arguing not only that the rule erected a prudential procedural bar to the

district court's consideration of Soto's claims but also that the rule eliminated any district court subject matter jurisdiction beyond that necessary to replace Soto's vacated hard 50 sentence. The State also continues to argue that any motion for new trial based on the Navarrette-Pacheco material was untimely under the two-year limitation of K.S.A. 2018 Supp. 22-3501(1).

DISCUSSION

Because the State now suggests that the mandate rule deprived the district court of subject matter jurisdiction to address the merits of Soto's claims arising out of the Navarrette-Pacheco polygraph reports, we must first address that threshold argument. See *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010) (subject matter jurisdiction can be raised at any time; can be raised by court's own motion); *Stechschulte v. Jennings*, 297 Kan. 2, 29, 298 P.3d 1083 (2013) (courts have independent duty to determine if subject matter jurisdiction exists).

*Mandate Rule*

Questions of subject matter jurisdiction raise issues of law reviewable de novo on appeal. See *State v. Woolverton,* 284 Kan. 59, Syl. ¶ 3, 159 P.3d 985 (2007). And the State's failure to raise a subject matter jurisdiction issue based on the mandate rule in the district court does not bar the argument on appeal, because "'parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. Nor can parties [confer] jurisdiction on a court by failing to object to its lack of jurisdiction.'" *State v. Valladarez*, 288 Kan. 671, 675, 206 P.3d 879 (2009) (quoting *State v. Elliott*, 281 Kan. 583, 588, 133 P.3d 1253 [2006]).

The State points to two statutes, one case from this court, and two cases from the Court of Appeals to support its argument that the mandate rule deprived Judge Kaufman of subject matter jurisdiction to decide Soto's *Brady* claim. A close examination of these authorities and others not cited by the State demonstrates that the rule has not been consistently characterized as posing a jurisdictional bar.

In *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), this court discussed district court jurisdiction over criminal cases extensively on our way to clarifying Kansas law governing charging documents. As we said there, Article 3, Section 1, of the Kansas Constitution vests "judicial power of the state 'exclusively in one court of justice,' divided into the Supreme Court, 'district courts, and such other courts as are provided by law.'" 304 Kan. at 789 (quoting Kan. Const. art. 3, § 1). Article 3, Section 6(b) provides "that the 'district courts shall have such jurisdiction in their respective districts as may be provided by law.'" 304 Kan. at 789 (quoting Kan. Const. art. 3, § 6[b]). We continued:

> "[S]everal statutes also have governed. They continue, when given appropriate attention, to reinforce the [C]onstitution's language and clarify the true source of district court subject matter jurisdiction over criminal cases. K.S.A. 20-301 or a predecessor provision has provided since 1868 that there 'shall be in each county' a district court that 'shall have general original jurisdiction' on all matters, 'both civil and criminal,' unless otherwise provided by law. See G.S. 1868, ch. 28, art. 1, sec. 1. In addition, since 1868, Kansas statutes have provided that '[t]he district courts shall have exclusive original jurisdiction' in all felony cases. See G.S. 1868, ch. 31, art. 10, sec. 308. K.S.A. 22-2601 now provides that, except as provided in K.S.A. 12-4104 dealing with the jurisdiction of municipal courts, 'the district court shall have exclusive jurisdiction to try all cases of felony and other criminal cases arising under the statutes of the state of Kansas.' See also *Chelf v. State*, 46 Kan. App. 2d 522, 529, 263 P.3d 852 (2011) (subject matter jurisdiction vested by statute, constitution) (citing *Kingsley*[ *v. Kansas Dept. of Revenue*], 288 Kan. [390,] 395, [204 P.3d 562 (2009)])." *Dunn*, 304 Kan. at 789-90.

Thus a district court has subject matter jurisdiction to try a felony criminal prosecution such as this one against Soto. That jurisdiction is suspended from the time an appellate docketing statement is filed until an appeal is complete and a mandate issued. See *State v. Eisenhour*, 305 Kan. 409, 411, 384 P.3d 426 (2016).

Here, of course, we are concerned with the existence and extent of any limits on the district court's subject matter jurisdiction after an appellate mandate issues. The State asserts that a mandate such as the one issued here—focused only on ensuring district court replacement of Soto's vacated hard 50 sentence—means the district court has no jurisdiction to do anything else after remand, period.

The State first points to K.S.A. 60-2106(c) and K.S.A. 20-108.

K.S.A. 60-2106(c) reads in pertinent part:

"When . . . a decision of an appellate court becomes final, such court shall promptly cause to be transmitted to the clerk of the district court its mandate containing such directions as are appropriate under the decision. A copy of the opinion of the court shall accompany and be a part of the mandate. . . . Such mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."

Kansas first codified the requirement of a mandate issuing after an appeal in 1868. See G.S. 1868, ch. 80, art. 22, sec. 559. And the Legislature recodified the concept, limiting it to appeals taken to this court, in 1909 and, again, in the 1923 Revised Statutes. See L. 1909, ch. 182, sec. 566; R.S. 1923, 60-3303. The current language of K.S.A. 60-2106(c) has not changed in any particular significant to the question before us since it was enacted by the Legislature in 1963; that year it was adopted as part of Kansas'

12

Revised Code of Civil Procedure. See L. 1963, ch. 303, § 60-2106; see also 5 Gard & Casad, Kansas Law and Practice:  Kansas C. Civ. Proc. Annot. § 60-2106, commentary (4th ed. 2003) (describing 1972 amendment regarding memorandum opinions effected by Supreme Court, "presumably pursuant to the authority of K.S.A. 60-2607"); L. 1975, ch. 178, § 30; L. 2005, ch. 2, § 23 (special session).

K.S.A. 20-108 reads:

"An appellate court of this state may require the district court of the county where any action or proceeding shall have originated to carry the judgment or decree of the appellate court into execution; and the same shall be carried into execution by proper proceedings, by such district court, according to the command of the appellate court made therein."

This statute has even more ancient lineage than K.S.A. 60-2106(c). Although K.S.A. 20-108's scope was broadened in 1978 to include the newly recreated Court of Appeals, see L. 1978, ch. 107, § 1; see also *Inaugural Ceremonies*, 1 Kan. App. 2d viii, viii-xxiv (1977), its substance and most of its language was originated by Kansas' first Legislature in 1861. See L. 1861, ch. 21, § 9. That substance and language have persisted through the historical periods governed by our state's General Statutes of 1868 and its Revised Statutes of 1923—and on into the present. Compare G.S. 1868, ch. 27, art. 1, sec. 7, with R.S. 1923, 20-108.

The language of neither K.S.A. 60-2106(c) nor K.S.A. 20-108 explicitly or even implicitly deprives a district court of its jurisdiction to address an entirely new issue that surfaces in a case as a result of events that occur after a mandate issues. And it is not this court's task to add to the plain language of a longstanding legislative formulation to effectuate a party's desire. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 188, 239 P.3d 66 (2010) (legislative intent discerned through language employed, giving ordinary

13

words their ordinary meanings; court must give effect to express language, must not determine what law should be; courts will not read statute in manner to add something not readily contained within it).

In addition, the historical record of the enactments tends to show that these statutes were merely designed to enforce the hierarchy of Kansas courts, ensuring that appellate orders would not be ignored by lower courts. They were not designed to set up broad limits on subject matter jurisdiction once a case was remanded.

The progression of predecessors to today's K.S.A. 60-2106(c), for example, demonstrates that the mandate came to be understood as solely a creature of higher state courts. The original 1868 statute included district courts while later versions did not. Compare G.S. 1868, ch. 80, art. 22, sec. 559, with L. 1909, ch. 182, sec. 566.

With regard to K.S.A. 20-108, explanatory marginalia accompanying the publication of its 1861 version are revealing. They stated that the Supreme Court of the new state "[m]ay order inferior courts to put in execution its decrees." L. 1861, ch. 21, § 9 (marginalia). And the relevant notes were repeated in the 1868 published version. See G.S. 1868, ch. 27, art. 1, sec. 7. By 1923, the notes had disappeared, but the statute carried the bolded label: "**Inferior courts required to execute judgments.**" R.S. 1923, 20-108. This label and the text it introduces have been softened in the years since to stop referring to district courts as "inferior." The label now reads: "**Carrying out appellate court judgments and decrees by district courts.**" K.S.A. 20-108. But the shift in tone cannot be equated with a shift in meaning. To the extent an appellate court has spoken, the district court must listen and, as required, act.

The State also pins its jurisdictional argument to this court's decision in *State v. Collier*, 263 Kan. 629, 952 P.2d 1326 (1998), and the Court of Appeals decisions in *State*

14

*v. Downey*, 29 Kan. App. 2d 467, 27 P.3d 939 (2001), and *Edwards v. State*, 31 Kan. App. 2d 778, 73 P.3d 772 (2003). We address each in turn.

In *Collier*, we held that the State and district court could not revisit the adequacy of the State's notice of its intention to seek a hard 40 sentence after the State had lost that issue on appeal, prompting this court to vacate the hard 40 and remand for resentencing. 263 Kan. at 636. We discussed the mandate rule and its underpinning in the prudential common-law doctrine of law of the case:

"The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.

". . . Ordinarily, under the law of the case doctrine, once an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice.

"[Thus, it] is axiomatic that on remand for further proceedings after a decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." 263 Kan. 629, Syl. ¶¶ 2, 3, 4.

We have no quarrel today with *Collier*'s recitation of the origins of the mandate rule or its application of the rule and the doctrine of law of the case generally to prevent the State and the district court from revisiting an issue already settled by the appellate

15

court. It is exactly such relitigation that the mandate rule should eliminate. But *Collier* simply cannot do the heavy lift the State assigns to it. It did not call the mandate rule jurisdictional, and it did not eliminate the district court's ability to address any matter left undecided by the issuance of the appellate mandate.

The Court of Appeals decision in *Downey*, relying upon and overreading *Collier*, does refer to the mandate rule as jurisdictional. In *Downey*, an appellate panel had refused to review the merits of a suppression issue it considered unpreserved by the defense, but it ultimately remanded to the district court for resentencing. On remand, the district judge decided to take another look at the events leading to the defendant's convictions, granting an out-of-time defense motion for arrest of judgment. The State then pursued an interlocutory appeal.

The Court of Appeals reversed, disapproving of the district court's effort to remake the landscape that predated and underlay the earlier mandate. The panel said that the district judge could do "nothing more, nothing less" than what the mandate permitted. 29 Kan. App. 2d at 471. Much more recent cases from this court, not cited by the State in this matter, have echoed *Downey*'s limitations approach, if not its jurisdictional rhetoric, in other situations. See *State v. Moore*, 309 Kan. 825, 825-26, 441 P.3d 22 (2019) (district court directed to change part of sentence on remand, not free to change part of sentence already upheld by appellate court); *State v. Warren*, 307 Kan. 609, 613-15, 412 P.3d 993 (2018) (same); *Cooke v. Gillespie*, 285 Kan. 748, 758-59, 176 P.3d 144 (2008) (Johnson, J., concurring) (mandate limiting district court authority on remand to equitable division of expenses does not allow statute of limitations issue abandoned on earlier appeal to be resurrected).

The other Court of Appeals decision relied on by the State to label the mandate rule jurisdictional is *Edwards*. That case dealt with whether a K.S.A. 60-1507 movant

16

could expand his allegations regarding trial counsel's ineffective assistance after a remand for further proceedings on other allegations. The panel recognized the difference between issues settled by an appellate mandate and those not so settled, discussing at some length how to draw this important distinction:

"Where the mandate of an appellate court merely reverses a ruling of the district court and remands the case for further proceedings but does not direct the judgment of the district court, the district court has discretion to preside over the remaining trial proceedings, as if the district court had originally made the ruling mandated by the appellate court. See *Waddell v. Woods*, 160 Kan. 481, 483-84, 163 P.2d 348 (1945). In other words, a district court may address those issues necessary to the resolution of the case that were left open by the appellate court's mandate. See *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 40 L. Ed. 414, 16 S. Ct. 291 [1985]; *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765, 767 [9th Cir. 1987]).

"However, where the appellate court has decided a particular issue, by explicit language or by necessary implication, the district court is foreclosed from reconsidering such an issue. See *Guidry v. Sheet Metal Wkrs. Intern. Ass'n, Local 9*, 10 F.3d 700, 705-06 (10th Cir. 1993). See also *Laitram Corp.*, 115 F.3d at 951 ('Although the district court cites much authority for the proposition that issues decided implicitly by courts of appeals may not be re-examined by the district court, the rule is actually applicable only to those issues decided by *necessary* implication.').

"Generally, an explicit ruling of the appellate court is easily identified upon a careful reading of the opinion. An implicit ruling may be more difficult to ascertain, but we adopt a three-pronged test for determining that a prior decision has foreclosed further inquiry into a subject: (1) the issue necessarily had to have been considered in the prior appeal in order to reach a decision; (2) consideration of the issue on remand would abrogate the appellate court's decision; or (3) the issue is so closely related to an issue explicitly resolved by the appellate court that no additional consideration is necessary. See *Guidry*, 10 F.3d at 707." *Edwards*, 31 Kan. App. 2d at 781.

17

In the end, the *Edwards* panel merely invoked the mandate rule to sort through the movant's claims and decide which among them were still alive in the district court; it did not label the mandate rule jurisdictional. 31 Kan. App. 2d at 784-85.

At least one other Court of Appeals decision, not cited by the State, mimics *Downey* by referring to the mandate rule as jurisdictional. See *State v. Merz*, No. 100,573, 2010 WL 653094, at *1 (Kan. App. 2010) (unpublished opinion). But this court—as it turns out, in harmony with the United States Supreme Court and the United States Court of Appeals for the Tenth Circuit—has so far resisted the impulse to make the "jurisdictional" generalization about the mandate rule and the broader doctrine of law of the case. Cf. *Castro v. United States*, 540 U.S. 375, 384, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003) (law of case doctrine simply expresses common judicial practice, does not limit court's power); *United States v. Gama-Bastidas*, 222 F.3d 779, 784 (10th Cir. 2000) (neither law of case nor mandate rule jurisdictional).

We continue to resist that impulse today. Our synthesis of Kansas precedent on the mandate rule is more nuanced than the State's: The rule applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate. If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case. Such issues may have been allocated for decision in the district court in the first place and then untouched by appellate proceedings. See *State v. Morton*, 283 Kan. 464, 471-74, 153 P.3d 532 (2007) (district court presiding over retrial pursuant to appellate mandate permitted to reconsider

18

motion in limine ruling never contested in appeal). They may include issues arising from late-breaking facts. See *Duffitt & Ramsey v. Crozier, Judge*, 30 Kan. 150, 152-53, 1 P. 69 (1883) (differentiating issues within mandate, those without; "matters arising subsequent to" appellate decision may be considered on remand; discretion to do something for the parties not covered by the mandate can be exercised "only upon the presentation of new facts"); see also *Jones v. Smith*, 5 Kan. App. 2d 352, 354, 616 P.2d 300 (1980) (K.S.A. 60-2106[c] permits district judge to take up motion for relief from judgment filed after a mandate issued in earlier appeal) (quoting *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18, 97 S. Ct. 31, 50 L. Ed. 2d 21 [1976]) (appellate mandate relates to record, issues then before court; mandate does not purport to deal with possible later events).

Once a district judge has acted on remand, we judge whether he or she has complied with Kansas' more subtle version of the mandate rule de novo on appeal. See *Moore*, 309 Kan. 825, Syl. ¶ 2; *State v. Guder*, 293 Kan. 763, 765, 267 P.3d 751 (2012).

In this case, it is obvious that the issue Soto wanted Judge Kaufman to address on remand fell into the category of one arising from late-breaking facts. Soto did not seek to relitigate anything that predated the mandate. He sought the court's action on a legal issue arising from facts unknown to him until the morning his resentencing trial was set to begin. The mandate rule, as we have explained it, would not have prevented the judge from reaching the merits of the *Brady* issue.

Now, having addressed the State's subject matter jurisdiction challenge, which had the potential to lead to a ruling that Judge Kaufman was right for the wrong reason, see *State v. Gomez*, 290 Kan. 858, Syl. ¶ 2, 235 P.3d 1203 (2010) (if district court right for wrong reason, constitutional claim can be raised for first time on appeal), we turn to his *actual* reason for denying Soto a hearing on his *Brady* claim: untimeliness under K.S.A. 2018 Supp. 22-3501(1).

19

*K.S.A. 2018 Supp. 22-3501(1)*

An appeals court reviews a district judge's denial of a motion for a new trial for an abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 539, 285 P.3d 361 (2012). The abuse of discretion standard is well known:

> "Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Moreover, "[a] failure to recognize that one has discretion and any corollary failure to exercise it are legal errors" constituting an abuse of discretion. *State v. Redick*, 307 Kan. 797, 806, 414 P.3d 1207 (2018).

To resolve the question of whether Judge Kaufman abused his discretion, we must review and interpret the governing statute, K.S.A. 2018 Supp. 22-3501(1).

> "[W]hen appellate courts embark upon statutory interpretation and construction, 'the most fundamental rule . . . is that the legislature's intent governs if [it] can be ascertained.' The first step is to ascertain legislative intent through the language employed, giving ordinary words their ordinary meaning. When a statute is plain and unambiguous, this court must give effect to the statute's express language, instead of determining what the law should or should not be. Appellate courts will not speculate about legislative intent or read a statute in a manner that adds something not readily contained within it. [Citations omitted.]" *Redd*, 291 Kan. at 188.

K.S.A. 2018 Supp. 22-3501(1) reads:

"A motion for a new trial based on the ground of newly discovered evidence may be made within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 14 days after the verdict or finding of guilty or within such further time as the court may fix during the 14-day period."

For purposes of this appeal, the State does not dispute that the Navarrette-Pacheco polygraph reports were unknown to the defense before they were disclosed with the prosecutor's email on the morning Soto's resentencing trial was due to begin. The issue is whether Soto's *Brady* claim based on those reports could be pursued through the procedure of a motion for new trial on newly discovered evidence, specifically, whether his request for the relief of a new trial was timely. The answer turns on whether a "final judgment" was in place in Soto's case more than two years before he sought a new trial. The State contends that the issuance of our May 6, 2014 mandate, which upheld Soto's conviction but not his sentence, was all that was required to start the two-year clock.

"Final judgment" is not statutorily defined, but we have discussed its meaning and said that a "final judgment in a criminal case is the sentence" and that "[a] sentence is the judgment of the court which formally declares to the accused the legal consequences of his or her conviction or of the guilt to which he or she has confessed." *State v. Van Winkle*, 256 Kan. 890, Syl. ¶ 2, 889 P.2d 749 (1995); see *State v. Tafoya*, 304 Kan. 663, Syl. ¶ 2, 372 P.3d 1247 (2016) (final judgment in criminal case "is the sentence"); see also *Brady*, 373 U.S. at 85, n.1 ("general rule that '[f]inal judgment in a criminal case means sentence'").

Judge Kaufman instead relied on three Kansas cases—*State v. Holt*, 298 Kan. 469, 313 P.3d 826 (2013) (*Holt II*); *State v. Harris*, 249 Kan. 410, 819 P.2d 1169 (1991); and

*State v. Bradley*, 246 Kan. 316, 787 P.2d 706 (1990)—and one Eighth Circuit case—*United States v. White*, 557 F.2d 1249 (8th cir. 1997)—to support his ruling that an affirmance of a conviction on direct appeal is all that is required for a "final judgment" under K.S.A. 2018 Supp. 22-3501(1). These cases simply do not control the question.

*Holt II* involved the summary dismissal of a motion for new trial filed by the defendant "16 years after his convictions" and 14 years after those convictions were affirmed on appeal. 298 Kan. at 470. According to the briefs in the direct appeal available to the parties and Judge Kaufman both online and in the Supreme Court Law Library, the defendant had not challenged his sentence, meaning it was effectively affirmed on the same date as his convictions. See Brief of Appellant at ii-iv, *State v. Holt*, 260 Kan. 33, 917 P.2d 1332 (1996) (*Holt I*) (No. 73,397) 1995 WL 17145039, at *ii-iv. This procedural history makes the case distinct from Soto's.

In addition, the *Holt II* motion was not based on newly discovered evidence, and thus the K.S.A. 2018 Supp. 22-3501(1) two-year language Judge Kaufman needed to apply in this case was not at issue. The *Holt II* motion's timeliness was instead controlled by the statute's 14-day provision tied not to "final judgment" but to "'verdict or finding of guilty or . . . [governed by] such further time as the court may fix during the 14-day period.'" 298 Kan. at 479. The only question actually before the *Holt II* court was whether a "shall" forming a part of the 14-day language was directory or mandatory, a question entirely different from the question before us here. 298 Kan. at 472-73.

In the process of deciding the "shall" issue before it, however, the *Holt II* opinion did reference the earlier *Bradley* case and its holding on whether the K.S.A. 2018 Supp. 22-3501(1) language regarding the two-year deadline was mandatory. *Bradley* had briefly discussed the Kansas statute's similarity to a two-year federal deadline employed in the *White* case. See *Holt II*, 298 Kan. at 474-75 (discussing *Bradley*, 246 Kan. at 317-18

22

[discussing *White*, 557 F.2d at 1251]). The federal limitation began to run at the "termination of [the defendant's] direct appeal"; and *White* thus held that a motion for new trial coming three years after the defendant's direct appeal terminated came too late. *White*, 557 F.2d at 1250.

But the defendants in *Bradley* and in *White* also were in procedural positions distinct from Soto's in this case. Despite the *Bradley* decision's reference to the new trial motion being "filed . . . almost seven years after [defendant Sylvester Tyrone Bradley's] convictions were affirmed on appeal," 246 Kan. at 317, a summary phrase echoed later in the *Holt II* reference to the length of time between convictions and motion, Bradley did not challenge his sentence on direct appeal. See Brief of Appellant at 3, *State v. Bradley* (Kan. App. 1982) (No. 53,850). Thus, like the defendant in *Holt II*, his sentence was effectively affirmed the same date as his convictions. The same was true of the defendant in *White*, who challenged only his federal bank robbery convictions on direct appeal. See *White*, 557 F.2d at 1250-51. Again, this meant his unchallenged sentence was effectively affirmed the same date as his convictions. And a later collateral attack under 28 U.S.C. § 2255 could not revive the two-year period for filing a motion for new trial.

Finally, *Harris* also cannot rescue Judge Kaufman's ruling. It, in fact, provides strong support for the idea that both conviction and sentence must be affirmed on appeal before there is a final judgment under K.S.A. 2018 Supp. 22-3501(1).

Defendant Wiley Harris had a K.S.A. 60-1507 motion on appeal before the Court of Appeals at the same time that he filed a motion for new trial in the district court. This court rejected the State's argument that Harris could not pursue both the independent civil action and his motion for new trial in his criminal case at one time. *Harris*, 249 Kan. at 410, 413. It also reversed the district court's denial of Harris' motion for new trial based on newly discovered evidence, which was filed within two years after his conviction—

and thus, necessarily, his unchallenged sentence—were affirmed on appeal. 249 Kan. at 413-14. In doing so, the court cited *State v. Osbey*, 238 Kan. 280, 283, 710 P.2d 676 (1985), for the proposition that "'[a] conviction is not considered final until the judgment of conviction has been rendered, *the availability of an appeal has been exhausted*, and the time for any rehearing or final review has passed.'" (Emphasis added.) *Harris*, 249 Kan. at 413-414 (quoting *Osbey*, 234 Kan. at 283). The availability of an appeal is not exhausted until both a defendant's conviction and sentence are final.

Under all of the authorities we have discussed, a case such as Soto's, in which a conviction or convictions have been affirmed on appeal but at least some part of the sentence has been vacated and remanded to the district court for resentencing is one in which there is no final sentence and, hence, no final judgment under K.S.A. 2018 Supp. 22-3501(1).

The State makes an alternative argument in the closing paragraphs of its brief: If Soto's motion was not too late, it was too early. We disagree. According to the plain language of K.S.A. 2018 Supp. 22-3501(1), such a motion "may be made within two years after final judgment." The statute sets a deadline; it does not set a starting point. Of course, as experienced counsel for the State is well aware, motions for new trial can be and are filed after trial and before sentencing all of the time in Kansas district courts. Especially in a situation where there is an allegation of newly discovered *Brady* evidence, the sooner a district judge can address the claim, the better.

We also believe our interpretation of the statute's "final judgment" language is bolstered by the statute's additional language providing that "if an appeal is pending the court may grant the motion [for new trial based on newly discovered evidence] only on remand of the case." K.S.A. 2018 Supp. 22-3501(1). This language shows the Legislature

24

intended district courts to have the ability to hear motions for new trial based on newly discovered evidence even after a remand from an appeal.

In short, Judge Kaufman could have heard Soto's motion seeking a new trial under K.S.A. 2018 Supp. 22-3501(1). By failing to recognize that he was legally authorized to hear the merits of the *Brady* claim, his denial of Soto's motion qualified as an abuse of discretion. This case must be remanded again for Judge Kaufman to evaluate the merits of the *Brady* claim and whether it demands the relief of a new trial.

*Ineffective Assistance of Counsel*

Soto's brief also sought a ruling from the court on whether ineffective assistance of counsel required a new trial. This issue was not addressed by Judge Kaufman, which is enough to prevent us from reaching its merits on appeal. See *State v. Estrada-Vital,* 302 Kan. 549, 555, 356 P.3d 1058 (2015) (lack of factual findings by district court can hamper ability to consider issue on appeal). But, even if an absence of findings and conclusions from Judge Kaufman did not deter us, we would not need to reach the merits of the ineffective assistance claim at this time. We are already remanding to the district court for a merits hearing on Soto's *Brady* claim. His counsel conceded at oral argument before us that Soto advanced the ineffective assistance claim only because it might make a procedure other than a motion for new trial available to him.

CONCLUSION

The decision of the district court is reversed. The case is remanded to the district court for a hearing on the merits of Soto's *Brady* claim, specifically whether the discovery of the polygraph reports is so significant that a new trial on Soto's guilt is required.

25